IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES *for the use of*
TYMATT INDUSTRIES, INC.,

   *Plaintiff*,

v.

ALLEN & SHARIFF CONSTRUCTION
SERVICES, LLC, *et al.*,

   *Defendants*.

Civil Action No. ELH-12-3463

## MEMORANDUM OPINION

On November 26, 2012, Tymatt Industries, Inc. ("Tymatt"), the use plaintiff, filed suit under the Miller Act, 40 U.S.C. §§ 3131 *et seq.*, against Allen & Shariff Construction Services, LLC ("Allen & Shariff") and the United States Security Company ("USSC"), defendants. This Memorandum Opinion resolves defendants' Motion to Dismiss ("Motion") (ECF 3), filed under Fed. R. Civ. P. 12(b), which has been fully briefed.[1] For the reasons that follow, pursuant to notice provided to the parties, *see* ECF 4, I will convert the Motion to a motion for summary judgment pursuant to Fed. R. Civ. P. 12(d), and will enter judgment in favor of defendants as to Tymatt's Miller Act claim on the ground that the claim is time-barred.

**Background**

The Miller Act imposes certain obligations on the prime contractor on any "contract of more than $100,000 . . . for the construction alteration, or repair of any public building or public work of the Federal Government." 40 U.S.C. § 3131(b). Of import here, the Miller Act requires

---

[1] I have considered the Motion, Tymatt's Opposition (ECF 5), and defendants' Reply (ECF 6). Pursuant to Local Rule 105.6, no hearing is necessary to resolve the Motion.

the contractor to furnish a payment bond, through a satisfactory surety, "for the protection of all persons supplying labor and material in carrying out the work provided for in the contract." *Id.* § 3131(b)(2). The Act authorizes any "person that has furnished labor or material in carrying out work" under a Miller Act contract and who "has not been paid in full within 90 days after the day on which the person did or performed the last of the labor furnished or supplied the material" to bring "a civil action on the payment bond." *Id.* § 3133(b)(1). Such a civil action must be filed "in the name of the United States for the use of the person bringing the action." *Id.* § 3133(b)(3)(A).

According to the Complaint (ECF 1), Allen & Shariff was the prime contractor on a federal contract for the construction of a dam in Bethesda, Maryland, and related remediation. *See* Complaint ¶ 5. USSC was the surety on the Miller Act payment bond for the contract. *Id.* ¶¶ 3 & 6. Tymatt was a subcontractor on the project, and performed a variety of labor under the contract, pursuant to a subcontract between Allen & Shariff and Tymatt that plaintiff has appended to the Complaint. *See* ECF 1-1. Tymatt alleges that the "reasonable and agreed value" of its labor, under the original subcontract and subsequent approved change orders, was $545,646.94. Complaint ¶ 8. However, Tymatt asserts that Allen & Shariff only paid $437,981.68, leaving a balance due of $107,665.26. *Id.*

The Miller Act contains a limitations provision, which states: "An action brought under this subsection must be brought no later than one year after the day on which the last of the labor was performed or material was supplied by the person bringing the action." 40 U.S.C. § 3133(b)(4). In the Complaint, Tymatt claims that the "date on which the last labor was performed and equipment supplied to [Allen & Shariff] by [Tymatt] was November 25, 2011."

Complaint ¶ 11. As noted, Tymatt filed its Complaint on Monday, November 26, 2012, seeking $107,665.26 in damages, with interest and costs.

Additional facts will be included in the Discussion.

**Discussion**

A. Procedural History

Defendants contend that Tymatt's action is time-barred. In their Motion, defendants mention, in a footnote, that they dispute Tymatt's allegation that its last day of work on the project was November 25, 2011. *See* Motion at 2 n.1. Instead, they assert that "Tymatt's last day of work was either November 17, 2011, the last day of productive work by Tymatt on the site, or November 22, 2011, the day that Tymatt began to remove [its] equipment from the site." *Id.* However, for purposes of their Motion defendants assume the truth of Tymatt's allegation that its last day of work was November 25, 2011. *Id.* According to defendants, the Complaint nevertheless is time-barred on its face under the Miller Act's one-year limitations provision, because Tymatt filed suit on November 26, 2011—one year and one day after its alleged last day of work.

Rule 6(a) of the Federal Rules of Civil Procedure applies, by its terms, *inter alia*, "in computing any time specified . . . in any statute that does not specify a method of computing time." Defendants acknowledge that, ordinarily, the rule would operate to extend the one-year period in this circumstance, because November 25, 2012 (the one-year anniversary of November 25, 2011) fell on a Sunday, and Fed. R. Civ. P. 6(a)(1)(C) provides that, "if the last day [of a given time period] is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday." So, if Fed. R. Civ. P.

6(a)(1)(C) applies here, Tymatt's Complaint would be timely on its face. But, defendants rely on *United States ex rel. Magna Masonry, Inc. v. R.T. Woodfield, Inc.*, 709 F.2d 249 (4th Cir. 1983), which they contend held, as a matter of controlling Fourth Circuit precedent, that Rule 6(a) does not apply to the limitations period of the Miller Act. Accordingly, they reason that Tymatt's Complaint was filed one day too late.

Before Tymatt responded to defendants' Motion, I issued an Order (ECF 4), in which I observed that, although *Magna Masonry* "appeared to hold that Rule 6(a) does not apply to the limitations period of the Miller Act," this ruling seemed inconsistent with more recent Fourth Circuit case law. *See, e.g.*, *Hernandez v. Caldwell*, 225 F.3d 435, 439 (4th Cir. 2000) ("We use Rule 6(a) in computing the limitations periods provided in statutes."). I reasoned that, if "*Magna Masonry* represents the current state of circuit precedent" on the Miller Act's limitations provision, "this Court may be required to dismiss plaintiff's suit as time-barred," but that, on appeal, the Fourth Circuit might be inclined to reconsider *Magna Masonry*. I concluded that "it would be appropriate to make a record as to the actual date upon which the limitations period began to run, in order to facilitate review by the Fourth Circuit in the event of an appeal." Accordingly, I directed the parties to submit, with their subsequent briefing of the Motion, affidavit and documentary evidence regarding the date that the Miller Act limitations period began to run. I also notified the parties that, if necessary to consideration of evidence submitted by the parties, I would exercise my discretion under Fed. R. Civ. P. 12(d) to convert the Motion to one for summary judgment.

Thereafter, Tymatt submitted its Opposition, accompanied by an affidavit of Ted Neuman, its owner and CEO. *See* Neuman Affidavit (ECF 5-1). And, defendants submitted

their Reply, accompanied by an affidavit of its Project Manager, John Hyland, *see* Hyland Affidavit (ECF 6-2), and several other exhibits. *See* ECF 6-1, 6-3, 6-4, 6-5, 6-6, 6-7, 6-8.

B. <u>Standard of Review</u>

In their Motion, defendants rely on Fed. R. Civ. P. 12 as the vehicle for their challenge to the Complaint. Although they do not expressly invoke a specific subsection of Rule 12, they argue that plaintiff's alleged failure to file suit within the limitations period deprives the Court of "subject matter jurisdiction over the untimely action." Motion at 2. This suggests that their Motion arises under Rule 12(b)(1), which authorizes a motion to dismiss for "lack of subject-matter jurisdiction." In considering a Rule 12(b)(1) motion, a court may, under some circumstances "consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004).

However, a statute of limitations is ordinarily considered "an affirmative defense, meaning that the defendant generally bears the burden of affirmatively pleading its existence," *Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 653 (4th Cir. 2006), and it is "not jurisdictional." *Id.* at 654 n.8. As I will explain, I do not conclude that the Miller Act's statute of limitations presents a jurisdictional exception to this general rule. Accordingly, I will treat the limitations issue in this case as an affirmative defense.

An affirmative defense is the "'defendant's assertion raising new facts and arguments that, if true, will defeat the plaintiff's . . . claim, even if all allegations in the complaint are true.'" *Emergency One, Inc. v. Am. Fire Eagle Engine Co.*, 332 F.3d 264, 271 (4th Cir. 2003) (emphasis added) (internal citations and some internal quotation marks omitted). As indicated, defendant, rather than the plaintiff, bears the burden of pleading and proof as to an affirmative defense. *See,*

*e.g.*, *Taylor v. Sturgell*, 553 U.S. 880, 907 (2008) ("Ordinarily, it is incumbent on the defendant to plead and prove [an affirmative] defense."); *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008); *McNeill v. Polk*, 476 F.3d 206, 220 n.3 (4th Cir.), *cert. denied*, 552 U.S. 1043 (2007).

A "motion to dismiss filed under Federal Rule of Procedure 12(b)(6), which tests the sufficiency of the complaint, generally cannot reach the merits of an affirmative defense." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). But, an affirmative defense can be resolved by way of a Rule 12(b)(6) motion "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint." *Id.* "This principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] on the face of the complaint,'" or in other documents that are proper subjects of consideration under Rule 12(b)(6). *Id.* (quoting *Richmond, Fredericksburg & Potomac R.R. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)) (emphasis in *Goodman*).

Here, defendants' principal argument—that the Complaint is time-barred on its face—comes within the narrow exception articulated in *Goodman*, and thus can be resolved pursuant to Fed. R. Civ. P. 12(b)(6). In order to resolve the argument, the Court need only look to the last day of Tymatt's work as alleged in the Complaint, i.e., November 25, 2011; compare it to the date that the Complaint was filed with the Court, i.e., November 26, 2012; and determine as a matter of law whether the filing was timely. However, in order to consider defendants' contention that the actual last day of Tymatt's work on the contract was several days or weeks earlier, the Court must consider documents outside of the Complaint.

Ordinarily, on a motion to dismiss under Rule 12(b)(6), a court "may not consider any documents that are outside of the complaint, or not expressly incorporated therein," *Clatterbuck*

*v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir.2013), except for documents that are "integral to the complaint and authentic*." Philips v. Pitt County Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). But, Rule 12(d) permits a court to consider "matters outside the pleadings" in connection with a Rule 12(b)(6) motion, if the court "treat[s] [the motion] as one for summary judgment under Rule 56." *Id.*

A "Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials." *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997). Thus, a court may not convert a motion to dismiss to one for summary judgment *sua sponte*, unless it gives notice to the parties that it will do so. *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998) (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)). For this reason, I gave the parties clear notice in my prior Order that I would consider their submissions, if necessary, under a Rule 56 standard.

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2012 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id.* at 149. In general, courts are guided by whether consideration of

*v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir.2013), except for documents that are "integral to the complaint and authentic*." Philips v. Pitt County Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). But, Rule 12(d) permits a court to consider "matters outside the pleadings" in connection with a Rule 12(b)(6) motion, if the court "treat[s] [the motion] as one for summary judgment under Rule 56." *Id.*

A "Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials." *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997). Thus, a court may not convert a motion to dismiss to one for summary judgment *sua sponte*, unless it gives notice to the parties that it will do so. *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998) (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)). For this reason, I gave the parties clear notice in my prior Order that I would consider their submissions, if necessary, under a Rule 56 standard.

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2012 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id.* at 149. In general, courts are guided by whether consideration of

*v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir.2013), except for documents that are "integral to the complaint and authentic*." Philips v. Pitt County Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). But, Rule 12(d) permits a court to consider "matters outside the pleadings" in connection with a Rule 12(b)(6) motion, if the court "treat[s] [the motion] as one for summary judgment under Rule 56." *Id.*

A "Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials." *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997). Thus, a court may not convert a motion to dismiss to one for summary judgment *sua sponte*, unless it gives notice to the parties that it will do so. *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998) (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)). For this reason, I gave the parties clear notice in my prior Order that I would consider their submissions, if necessary, under a Rule 56 standard.

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2012 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id.* at 149. In general, courts are guided by whether consideration of

extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.* at 165-67.

Here, I conclude that it is appropriate to consider on a summary judgment basis the narrow issue of the date on which the limitations period began to run under the Miller Act. Neither side objected, pursuant to Fed. R. Civ. P. 56(d) or otherwise, to the Court's proposal to consider, in advance of discovery, evidence extrinsic to the Complaint regarding this issue, on a summary judgment basis. Moreover, the evidence as to this issue is limited and there is no apparent need for discovery with respect to it. Where the parties have placed the Court on notice that there may be a factual dispute regarding the threshold issue of limitations, it serves judicial efficiency to determine as early as possible in the litigation, before the parties incur costs of discovery as to the merits, whether the dispute as to limitations is material and genuine.

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). For purposes of the Motion, the governing law is derived from the Miller Act's statute of limitations and concerns the standard to determine when a subcontractor has performed the "last of the labor" on a contract, 40 U.S.C. § 3133(b)(4), thereby triggering the running of the one-year limitations period. The material facts are those concerning what labor Tymatt and its employees performed at the project site, and the dates on which they performed that labor.

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must "set forth specific facts showing that there is a genuine issue for trial." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting former Fed. R. Civ. P. 56(e)). Of course, the court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Medical Center, Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002).

### C. *Magna Masonry*

As noted, defendants' primary claim is that, pursuant to the Fourth Circuit's 1983 decision in *Magna Masonry*, *supra*, 709 F.2d 249, Fed. R. Civ. P. 6(a) does not apply to the Miller Act's one-year limitations period. Therefore, they reason that where the one-year limitations period expires on a Sunday, a complaint filed the following day (Monday) is time-barred. As I will explain, I disagree.

In *Magna Masonry*, as here, a subcontractor filed suit under the Miller Act one day after the one-year anniversary of the date that the subcontractor had allegedly performed its last work. *See id.* at 250. The subcontractor purportedly had completed its work on July 23, 1979, and filed suit a year and a day later, on July 24, 1980. *Id.* The district court ruled that the complaint was timely. *Id.* The *Magna Masonry* Court recounted that the district court had "based its inclusion of July 24, 1980, in the one year period after July 23, 1979, on an alternative holding in *United States ex rel. Altman v. Young Lumber Co.*, 376 F. Supp. 1290 (D.S.C. 1974)." *Id.*[2] According

---

[2] The district court decision in *Magna Masonry* is not reported.

- 9 -

to *Magna Masonry*, the court in *Young Lumber* had held "that, even if the one year limitations period . . . began to run on August 30, 1972, it included August 31, 1973, when calculated according to the provisions of Fed. R. Civ. P. 6(a)." *Id.* Then, in the statement upon which defendants in this case rely, the *Magna Masonry* Court said: "[W]e disagree with the application of Rule 6(a) to the Miller Act's limitations period suggested by the alternative holding in *Young Lumber* . . . ." *Id.* The Court did not further explain this statement.

From this ambiguous statement, defendants reason that controlling Fourth Circuit precedent precludes extension of the Miller Act's limitations period by operation of Rule 6(a) to the next day that court is open, when the limitations period would otherwise expire on a weekend or holiday. Defendant's proposition is defensible on a cursory reading of *Magna Masonry*. And, to be sure, some courts have understood *Magna Masonry* to stand for that proposition, although such courts outside this circuit have rejected the proposition. *See United States ex rel. Burkholder v. Connelly*, No. 5:11-CV-00445-F, 2012 WL 4471599, at *2 (E.D.N.C. Sep. 26, 2012) (citing *Magna Masonry* for the proposition that the "Fourth Circuit Court of Appeals has ruled that Rule 6(a), Fed. R. Civ. P., does not apply to the Miller Act"); *United States ex rel. N.E.W. Interstate Concrete, Inc. v. EUI Corp.*, 93 F. Supp. 2d 974, 982 (S.D. Ind. 2000) (stating that *Magna Masonry* holds, "without explanation or citation, that Rule 6(a) does not apply to the Miller Act," and declining to follow that purported holding); *Bailey v. Faux*, 704 F. Supp. 1051, 1052-53 & n.4 (D. Utah 1989) (applying Rule 6(a) to the Miller Act's limitations period and describing *Magna Masonry* as "offer[ing] no explanation or insight into [its] rationale[ ]" for apparently not doing so).

Upon closer inspection, I conclude that *Magna Masonry* does not stand for the proposition that Rule 6(a) is inapplicable to the Miller Act's limitations period. Rather, more careful analysis reveals that, when the Fourth Circuit stated that it "disagree[d] with the application of Rule 6(a) to the Miller Act's limitations period suggested by the alternative holding in *Young Lumber*," 709 F.2d at 250, it was of the view that the district courts in *Magna Masonry* and *Young Lumber* had misinterpreted and misapplied Rule 6(a). Moreover, both *Magna Masonry* and *Young Lumber* dealt with a different provision of Rule 6(a) than the provision that extends until the next business day a filing period that expires on a weekend or holiday. This becomes apparent upon review of *Young Lumber*, and upon consulting a calendar for the dates at issue in *Young Lumber* and *Magna Masonry*.

In *Young Lumber*, the plaintiff filed suit in August 1973. In *Magna Masonry*, the plaintiff sued in July 1980.

**Calendar August 1973**

| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
|-----|-----|-----|-----|-----|-----|-----|
|     |     |     | 1   | 2   | 3   | 4   |
| 5   | 6   | 7   | 8   | 9   | 10  | 11  |
| 12  | 13  | 14  | 15  | 16  | 17  | 18  |
| 19  | 20  | 21  | 22  | 23  | 24  | 25  |
| 26  | 27  | 28  | 29  | 30  | 31  |     |

**Calendar July 1980**

| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
|-----|-----|-----|-----|-----|-----|-----|
|     |     | 1   | 2   | 3   | 4   | 5   |
| 6   | 7   | 8   | 9   | 10  | 11  | 12  |
| 13  | 14  | 15  | 16  | 17  | 18  | 19  |
| 20  | 21  | 22  | 23  | 24  | 25  | 26  |
| 27  | 28  | 29  | 30  | 31  |     |     |

Holidays and Observances: 4: Independence Day

In *Young Lumber*, the Miller Act limitations period ostensibly expired on August 30, 1973, a Thursday, and suit was filed on Friday, August 31, 1973. Thus, the limitations period did not expire on a weekend or court holiday. Similarly, in *Magna Masonry*, the limitations period expired on Wednesday, July 23, 1980, and suit was filed on Thursday, July 24, 1980.

- 11 -

Again, the one-year anniversary of the date that limitations began to run did not fall on a weekend or a holiday. Thus, barring closures of court due to inclement weather or other reasons that are not apparent from either opinion, the application of Rule 6(a) in either case could not have involved the portion of the rule that is now codified at Rule 6(a)(1)(C),[3] which provides that, "if the last day [of a given time period] is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday."

Examination of the district court decision in *Young Lumber* makes clear that the trial court based its determination that limitations had not expired on its reading of the portion of the rule that is now codified in Rule 6(a)(1)(A): that, in calculating a time period, one must "exclude the day of the event that triggers the period." The district court in *Young Lumber* reasoned: "[A]pplying Rule 6(a) to the Act, the period begins to run on the day after the end of the performance of labor. Thus if the last day labor was performed was August 30, 1972, the period commenced to run on August 31, and a suit filed on August 31, 1973, is timely." *Young Lumber*, 376 F. Supp. at 1295-96 (internal citation and footnote omitted). But, as the *Magna Masonry* Court would later indicate, the district court in *Young Lumber* misapplied the instruction in Rule 6(a) to exclude the day of the triggering event from the time period. The rule does not mean that, when the time period is one year, the period expires a year and a day after the triggering event. Rather, as the Fourth Circuit explained in *Hernandez*, *supra*, 225 F.3d 435, under a proper application of Rule 6(a) to a statute of limitations, "'[w]hen a statute of limitations is measured in years, the last day for instituting the action is the anniversary date of the start of the limitations period.'" *Id.* at 439 (quoting *Ross v. Artuz*, 150 F.3d 97, 103 (2d Cir. 1998)). Or, to use the

---

[3] Until 2007, Rule 6(a) was not divided into separate subsections.

example in *Hernandez*: if a time period is designated by statute as "one year," and "'the day of the . . . event . . . from which the designated period of time begins to run' is . . . April 24, 1996," that "day is excluded from the one year prescribed," and "the actual count on the limitations period beg[ins] on April 25, 1996, and end[s] on April 24, 1997 . . . ." *Hernandez*, 225 F.3d at 439 (quoting former Fed. R. Civ. P. 6(a)). This means that a period designated as "one year" will expire on the anniversary of its triggering event and (in a non-leap year) will contain exactly 365 days as calculated according to Rule 6(a)(1)(A).

In sum, the district court in *Young Lumber* erroneously applied Rule 6(a) to turn a one-year period into a 366-day period. It was that misinterpretation of Rule 6(a) that the Court in *Magna Masonry* condemned. Nothing in *Magna Masonry* is inconsistent with the Fourth Circuit's otherwise clear policy, as expressed in *Hernandez*, 225 F.3d at 439, that courts are to "use Rule 6(a) in computing the limitations periods provided in statutes."[4]

It follows that, if the triggering event of the Miller Act's limitations period—*i.e.*, the "day on which the last of the labor was performed or material was supplied" by Tymatt, 40 U.S.C. § 3133(b)(4)—actually occurred on November 25, 2011, as alleged in the Complaint, then this suit is not time-barred. Pursuant to Rule 6(a), the one year period would have expired on November 25, 2012, but that day was a Sunday. Therefore, pursuant to Rule 6(a)(1)(C), "the

---

[4] Some courts have concluded that Rule 6(a) cannot apply to statutes of limitations that are "jurisdictional" in nature. *See, e.g.*, *Mattson v. U.S. West Commc'ns, Inc.*, 967 F.2d 259, 262 (8th Cir. 1992) ("Since Rule 6(a) cannot apply until the court has jurisdiction, . . . the court cannot apply Rule 6(a) to determine whether jurisdiction exists."). But, even accepting that proposition for the sake of argument, the ordinary rule in the Fourth Circuit is that a statute of limitations is "not jurisdictional," *Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 654 n.8 (4th Cir. 2006), and nothing in *Magna Masonry* or any other Fourth Circuit decision suggests that the Miller Act's statute of limitations is an exception to this rule. *Cf. United States ex rel. Amer. Bank v. C.I.T. Const. Inc. of Tex.*, 944 F.2d 253, 257 (5th Cir. 1991) ("The one-year [limitations] period in the Miller Act is limitational, not jurisdictional.").

period continue[d] to run until the end of the next day that is not a Saturday, Sunday, or legal holiday," which was Monday, November 26, 2012, the day that suit was filed.[5]

### D. Summary Judgment

In the alternative, defendants claim that, even if Rule 6(a) applies to the Miller Act's statute of limitations, this action is still untimely because Tymatt's last day of work on the project was actually earlier than November 25, 2011, the date alleged in the Complaint. As noted, I invited the parties to submit evidence as to this issue so that the Court could consider the limitations issue under a summary judgment standard. As I will explain, on the basis of the record presented, I agree with defendants that there is no genuine dispute of material fact that Tymatt's last day of work on the project occurred before November 25, 2011. Therefore, I will grant summary judgment to defendants on plaintiff's Miller Act claim.

Defendants concede that Tymatt's personnel were present at the project site as late as November 25, 2011. But, they argue that a subcontractor's mere presence on the work site is insufficient to constitute the "perform[ance]" of "labor" or the "suppl[y]" of "materials," within the meaning of the Miller Act's statute of limitations. 40 U.S.C. § 3133(b)(4). *See* Reply at 16 ("[T]he mere presence of Tymatt on the job site. . . will not serve. . . [as] the trigger date of the Miller Act").

The Fourth Circuit has a well established rule to determine whether work performed by a subcontractor triggers the Miller Act limitations period. To determine the time at which the limitations period begins, the court must consider "whether the work was performed and the

---

[5] In their Reply, defendants argue that the limitations period actually expired one day earlier, on Saturday, November 24, 2012. Even if defendants are correct, the period still would be extended until Monday, November 26, 2012, by operation of Rule 6(a)(1)(C).

material supplied as a 'part of the original contract' or for the 'purpose of correcting defects, or making repairs following inspection of the project.'" *U.S. ex rel. Noland v. Andrews,* 406 F.2d 790, 792 (4th Cir. 1969) (quoting *U.S. ex rel. Austin v. Western Electric Co.,* 337 F.2d 568, 572-73 (9th Cir. 1964)). "The Fourth Circuit's interpretation of the Miller Act's 'last of the labor' language turns on a distinction between performance of the contract, on the one hand, and correction or repair, on the other . . . . [C]ontract work sets the starting-point for the limitations period, whereas corrections and repairs do not." *U.S. ex rel. East Coast Contracting, Inc. v. U.S. Fid. & Guarantee Co.*, Civ. No. CCB-03-3200, 2004 WL 1686496, at *3 (D. Md. July 23, 2004) (citation omitted), *aff'd*, 133 F. App'x 58 (4th Cir. 2005); *see also Magna Masonry*, 709 F.2d at 251 ("Finding no work done after July 23, 1979, that can be characterized as anything other than the making of repairs or the correcting of defects, we conclude that the filing of this action on July 24, 1980, was barred by the one year limitations period. . . .").

Moreover, and of import here, precedent establishes that, within the meaning of the Miller Act, it is impossible for a subcontractor to undertake labor in "performance of [a] contract," *East Coast Contracting*, 2004 WL 1686496, at *3, when the subcontractor's contract has been terminated by the prime contractor. *See United States ex rel. Taykinswell, Inc. v. Bencon Const. Co.*, 248 F. Supp. 502 (D. Md. 1965), *aff'd*, 369 F.2d 405 (4th Cir. 1966). In *Taykinswell*, the prime contractor had terminated the subcontract on April 18, 1963, and on April 24, 1963, directed the subcontractor's personnel to leave the construction site or be ejected as trespassers. *Id.* at 504. The subcontractor filed suit under the Miller Act on May 18, 1964, over a year after its subcontract had been terminated. The subcontractor contended that, because the prime contractor and replacement subcontractor "used the material and equipment which it had

left at the site in completing the work covered by the sub-contract," it "should be considered to have supplied equipment and materials after May 18, 1963, one year before the suit was filed." *Id.* The district court rejected this claim, stating that the subcontractor "did not . . . do any work or furnish[ ] any materials after April 24, 1963." *Id.* at 506. The Fourth Circuit affirmed in a short, reported, per curiam opinion, "for the reasons appearing in the opinion of the District Court." *Taykinswell*, 369 F.3d at 406.

In this case, the evidentiary record presented by the parties makes clear that there is no genuine dispute that Allen & Shariff terminated Tymatt's subcontract on November 18, 2011, and that Tymatt performed the last of its labor on the contract prior to November 25, 2011.

According to the evidence, section 15.1 of the subcontract between Tymatt and Allen & Shariff contained a default provision stating that "should Tymatt fail to perform, after giving three days written notice Allen & Shariff had the option to terminate the Subcontract for default if the defective performance was not cured." *See* Reply at 2; *see also* Defs.' Ex. B.1. Allen & Shariff issued three notices to Tymatt pursuant to section 15.1 of the subcontract. Allen & Shariff issued the first of these on October 24, 2011, stating in part that "project requirements. . . remain unfulfilled [pursuant to]. . . the kick-off meeting on. . . October 19, 2011" requiring remobilization of the project. Defs.' Ex. B.2. The letter set forth specific equipment expected for the task and further stated that if "Tymatt, Inc. does not have labor, equipment. . . and materials . . . to meet the remobilization requirements by October 25. . . at 7 a.m. . . . Allen & Shariff will immediately satisfy the open requirements at Tymatt's expense and risk." *Id.*

The second notice, dated October 26, 2011, advised Tymatt of "unfulfilled project requirements and. . . jobsite hours." Defs.' Ex. B.3. According to this notice, Tymatt not only

brought equipment over six hours later than the prior notice required, but the equipment brought was "insufficient to meet the project schedule. . . [or] satisfy the cure notice issued on 10/24/2011." *Id.* This letter provided detailed instructions as to the amount expected in terms of equipment and personnel and required that Tymatt be on site with the amount of materials and personnel requested by October 27, 2011. *See id.* ("We require at minimum the following personnel on site Thursday October 27, 2011 7:30 am to satisfy the mobilization phase of the project: two (2) men and appropriate materials to complete the sand bad filling operation, one (1) track hoe operator, five (5) dump trucks and operators, one (1) off road dump truck and operator and four (4) men to set up the removable pumping states and pumps.").

The last notice was issued on November 11, 2011, advising Tymatt that it was the "third and final notice to bring this job into compliance. Beginning Thursday, November, 17, 2011 another contractor will be brought onsite to supplement Tymatt's efforts in the complet[ion] of this project . . . at Tymatt's expense and risk." Defs.' Ex. B.4.

On November 18, 2011, Allen & Shariff sent Tymatt a termination notice stating that the "subcontract . . . has been terminated due to lack of performance effective immediately." Defs.' Ex. B.5. According to the notice, the termination was "the result of three Cure Notices dated October 24, 2011, October 26, 2011 and November 11, 2011 which identified poor performance, unsafe practices and corrective measures." *Id.* Additionally, Allen & Shariff notified Tymatt that its "base access privileges [would] be terminated on November 23, 2011," and requested that any "pumps and earthmoving machinery" be removed prior to that date. *Id.* Although Tymatt's employees and agents were no longer allowed on the job site after November 23, 2011,

defendants concede that Tymatt's personnel were present at the site on November 28, 2011, without authorization, in order to remove equipment. *See* Reply at 4 n.2; Deft's Ex.B ¶¶ 11-12.

The only evidence offered to support Tymatt's assertion that work was performed until November 25, 2011, is an affidavit from Tymatt's owner and CEO, Ted Neuman, who stated conclusorily that "the last day . . . work was performed or materials provided under the contract was November 25, 2011." This bare statement, which simply tracks the statutory language without offering any actual allegations of fact, does not suffice to establish a genuine factual dispute. *See, e.g.*, *Glynn v. EDO Corp.*, 710 F.3d 209, 216 (4th Cir. 2013) ("'[C]onclusory allegations . . . without further legitimate support clearly do[ ] not suffice' to create a genuine issue of material fact.") (citation omitted); *Erwin v. United States*, 591 F.3d 313, 319 (4th Cir. 2010) ("Of course, to defeat summary judgment, [a litigant] cannot create a material fact by reliance on conclusory allegations or bare denials.").

Viewing the evidence submitted in the light most favorable to Tymatt as the nonmoving party, the only evidence provided as to what was done by Tymatt on or after November 25, 2011, with reference to the commencement of the Miller Act limitations period, indicates that Tymatt's subcontract was terminated as of November 18, 2011. That Tymatt was authorized to remove materials from the site through November 23, 2011, does not equate to providing work or materials. As previously mentioned, the "last day at which labor was performed and/or material was supplied" means the last day at which a subcontractor performed labor or provided materials that were "part of the original contract." When a subcontractor has been terminated, the provision of a brief period of time for removal of its equipment from the job site is not sufficient to satisfy this standard.

Accordingly, I conclude that there is no genuine dispute of material fact as to when Tymatt performed the last of its labor pursuant to the contract; this occurred on or before November 18, 2011, and the start of the one-year limitations period was triggered by that date. One year later, in 2012, November 18 fell on a Sunday. The Court was open on the following day, Monday, November 19, 2012.[6] Accordingly, pursuant to 40 U.S.C. § 3133(b)(4) and Fed. R. Civ. P. 6(a), Tymatt was required to file suit no later than Monday, November 19, 2012. Because Tymatt failed to do so, its Miller Act claim is time-barred. Therefore, I will grant summary judgment in favor of defendants as to Tymatt's Miller Act claim.

### E. Supplemental Jurisdiction

Tymatt does not expressly assert claims under state common law for breach of contract or other theories, although the facts alleged perhaps could support such claims. Such claims likely would not be time-barred. *See* Md. Code (2013 Repl. Vol.), § 5-101 of the Courts & Judicial Proceedings Article (general three-year statute of limitations under Maryland state law).

Defendants assert, however, that the Court should not exercise jurisdiction over any such claims. *See* Motion at 5-6; Reply at 17. They correctly point out that Tymatt has not alleged facts sufficient to satisfy diversity jurisdiction, under 28 U.S.C. § 1332, so as to give the Court original jurisdiction over such state law claims. Moreover, especially where such claims have not been expressly asserted by Tymatt, there is no reason for the Court to exercise discretionary

---

[6] In 2012, the Court was closed from Thursday, November 22, through Sunday, November 25, in observance of the Thanksgiving holiday. *See* Fed. R. Civ. P. 6(a)(6) (providing that Thanksgiving Day is a "legal holiday" within the meaning of Fed. R. Civ. P. 6(a)); Local Rule 504.1 (providing that the Clerk's Office of the United States District Court for the District of Maryland is not open on "the day after Thanksgiving"); *see also* Fed. R. Civ. P. 6(a)(3)(A) (providing that, if the clerk's office is inaccessible on the last day for filing under Rule 6(a)(1), the time for filing is "extended to the first accessible day that is not a Saturday, Sunday, or legal holiday").

supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3), now that the only federal question claim has been resolved.

Tymatt presents no response to these arguments, and I am in full agreement with defendants. In *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995), the Fourth Circuit recognized that under § 1367(c)(3), "trial courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when federal claims have been extinguished." *See also ESAB Grp., Inc. v. Zurich Ins. PLC*, 685 F.3d 376, 394 (4th Cir. 2012) ("Section 1367(c) recognizes courts' authority to decline to exercise supplemental jurisdiction . . . where the court dismisses the claims over which it has original jurisdiction."). Accordingly, to the extent that Tymatt's complaint implicates state law claims, I decline to exercise jurisdiction over such claims, pursuant to 28 U.S.C. § 1367(c)(3).

An Order implementing my ruling follows.

Date: August 13, 2013         /s/
                              Ellen Lipton Hollander
                              United States District Judge